Matthew C. Wolf (SBN 223051)
Lauren VanDenburg (SBN 299957)
TURNER HENNINGSEN WOLF & VANDENBURG, LLP
707 Wilshire Boulevard, Suite 3700
Los Angeles, California 90017
Tel: 323-653-3900
Fax: 323-653-3021
mwolf@thwvlaw.com;
lvandenburg@thwvlaw.com;

Attorneys for Plaintiff
Reece Lewis

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REECE LEWIS, an individual, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>WHITESTONE HOME FURNISHINGS, LLC d/b/a/ Saatva,<br><br>Defendant. | Case No.: 2:24-cv-3788<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§1700 *et seq.*<br><br>(2) **VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.*<br><br>(3) **VIOLATION OF CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*<br><br>(4) **FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

1  Plaintiff Reece Lewis ("Plaintiff"), on behalf of himself and all others similarly
2  situated, hereby alleges the following at all times relevant to his complaint:

3  **I.    INTRODUCTION**

4  1.     This action is brought against Defendant Whitestone Home Furnishings,
5  LLC d/b/a Saatva ("Saatva" or "Defendant") for its false and deceptive pricing
6  practices in connection with its sale of mattresses, bedding and furniture on its
7  website https://www.saatva.com/ ("Website"). Defendant does so by advertising fake
8  and inflated comparison reference prices to deceive customers into a false belief that
9  the sale price is a deeply discounted bargain price. For example, anyone visiting the
10  Website on a given day during a "15% off" sale who buys a mattress "on sale" for
11  $1,781 based on a crossed-out reference price of $2,095 is being misled. This is
12  deception because that mattress has rarely, if ever, been sold in the recent past on the
13  Website for $2,095. Further, because Defendant is a direct to consumer business that
14  manufacturers its mattresses and sells them through its Website, Defendant cannot
15  justifiably claim that another retailer has sold that mattress for the crossed-out
16  reference price. Defendant exacerbates this deception by continuously advertising
17  that its purported sale are limited in time with imminent expiration dates, where in
18  reality the same or substantially similar "sales" are offered continuously or almost
19  continuously.

20  2.     In other words, Defendant's advertised "sales" are not really sales at all.
21  It is a misrepresentation that Defendant repeats over and over. The reference prices
22  on Defendant's Website are fake. They are not original, regular, retail, or former
23  prices. They are inflated prices posted to lure unsuspecting customers into jumping at
24  a fictitious "bargain" and intended to mislead customers into believing that the value
25  of the mattress they are buying is higher than reality. That is, Defendant engages in
26  this deceptive advertising and pricing scheme to give customers the false impression
27  that they are getting a deal or bargain when in reality they are being swindled by fake
28  sales and promotions. As a result, customers are deceived into spending money they

otherwise would not have spent, purchasing items they otherwise would not have purchased, and/or spending more money for an item than they otherwise would have absent the deceptive marketing. By this action, Plaintiff seeks to put an immediate end to Defendant's untruthful marketing practices and recover restitution and damages on behalf of all persons who have fallen victim to Defendant's sham sales by purchasing products on Defendant's Website from May 2020 to present.

## II.    PARTIES

3.    Plaintiff Reece Lewis is a citizen of the State of California and resident of the County of Los Angeles.

4.    On information and belief, Whitestone Home Furnishings, LLC is a Delaware limited liability company and has its principal place of business in Whitestone, New York.

## III.   JURISDICTION AND VENUE

5.    This Court has sub has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because the total matter in controversy exceeds $5 Million and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of California and Defendant is the citizen of a Delaware or New York.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

7.    Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and (c)(3) because Defendant is subject to the Court's personal jurisdiction in this judicial district.

8.    Defendant conducts, and at all relevant times, has conducted business in California through remote sales channels, including making sales through its Websites and delivering products into California.

9.    On information and belief, Defendant has a showroom located at 8715

1   Melrose Ave, West Hollywood, California.

2       10.    On information and belief, Defendant has showrooms located in San

3   Francisco, California and San Diego, California.

4   **IV.    GENERAL ALLEGATIONS**

5       **a.  Company Background**

6       11.    Saatva launched in about 2011 and is in the business of marketing and

7   selling mattresses and related products on the internet. On information and belief,

8   Defendant exclusively sells its products online. Defendant's marketing emphasizes its

9   bargains and online presence.

10       12.    Saatva sells its mattresses under three brands. Its initial product was the

11   Saatva Luxury Mattress. On information and belief, Defendant later launched its

12   Loom and Leaf and Zenhaven mattress brands on or about 2016. Defendant has since

13   expanded its offering to include bedding, beds and bed frames, and a wide-selection

14   of mattresses in every major category. On information and belief, Saatva was

15   estimated to bring in close to $500M in direct annual revenue in 2022 with no

16   wholesale channels.

17       **b.  Defendant's False and Deceptive Pricing Scheme**

18       13.    Unfortunately, Defendant's business model relies on deceiving

19   customers with fake sales. On a typical day, Defendant prominently displays on its

20   Website some form of a sale where all or nearly all products are purported marked

21   down by either a percentage or dollar amount (e.g. 15% or $300). All or nearly all

22   Saatva products on the site sold at over $1,000 are represented as being marked down

23   by the specified percentage discount or dollar amount from a substantially higher

24   reference price (hereafter, the "Reference Price"). The supposed markdowns are

25   represented to the customer by prominently displaying a crossed-out Reference Price

26   next to the sale price. Defendant employs these deceptive tactics to convey to

27   customers that the product had previously sold in the recent past at the Reference

28   Price, but is being sold to the customer at a substantial discount.

14.     However, this Reference Price is almost always, if not always, a falsely inflated price because Defendant rarely, if ever, sells its items at the Reference Price. The only purpose of the Reference Price is to mislead customers into believing that the displayed Reference Price is an original, regular, or retail price at which Defendant usually sells the item or previously sold the item in the recent past. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount, when in reality the alleged discount is false and fraudulent.

15.     Moreover, Saatva uses the same misleading Reference Prices and markdowns in its retail stores that it presents on its Website. Because Saatva is a direct-to-consumer seller of its products, the Reference Price cannot mean the prevailing market price of the product at any other outlet.

16.     Compounding the deception, the Website will often display messages of urgency, such as like "LAST CHANCE," or "SALE ENDS TODAY," "Hurry for Huge Savings!" or "Beat the clock prices increase on [date]." This is designed to mislead customers into believing they need to rush to take advantage of the fake promotions, when in reality, Defendant runs a promotion or sale on all, or nearly all, of those Saatva items on its Website everyday (or at a minimum, most days).

17.     For example, on January 2, 2024, the Website prominently advertised that the "End of year" sale was being "extended!" and that its was customers' "LAST CHANCE Ends 1/4." On the individual product pages of all (or nearly all) Saatva mattresses offered on the Website, as well as on the thumbnail displays of those products when presented as a list, Defendant represented each product as being discounted and included this representation beside the crossed-out fake Reference Price. On January 5, 2024, the Website offered those same products at discounted prices that were the same or substantially same as those offered on January 2, 2024 as part of a "4-Day Winter Blowout Sale."

18.     Below are representative examples of the thumbnail displays displayed on the Website using False Reference Prices:



19.     Below are representative examples of an individual product page displayed on the Website using the false Reference Prices:



20.     Defendant further reinforces the false impression that the customer has received a deep discount from an original or regular price during the order process.

More specifically, Defendant includes a line item for the "Discount" that the customer has received, which computes the amount of the supposed "Discount" from the false Reference Price the customer purportedly benefited from according to each product's individual product description page. This phantom "Discount" appears in the final order confirmation and receipt displayed to customers and delivered to customers by e-mail after the order has been completed and payment has been made. By doing so, Defendant not only deceives the customer with the sham sale, but then further uses that deception to build goodwill to lure customers back for more fake "sales" and "discounts."

21.     These pricing and advertising practices reflecting high-pressure fake sales are deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant supposedly on sale and at a substantial and deep discount. The truth is that Defendant rarely, if ever, sells any of its purportedly discounted products at the Reference Price. The Reference Price is, therefore, an artificially inflated price. In turn, the advertised discounts are thus nothing more than phantom markdowns.

### c.  Plaintiff's Purchase of Falsely Advertised Items From the Website

22.     Plaintiff fell victim to Defendant's false advertising and deceptive pricing practices. On or about March 16, 2024, Plaintiff visited the Website to look for a mattress. Plaintiff visited the site from his parent's home in Los Angeles County. Plaintiff saw on the Website that Defendant was running a limited-time sale on its mattresses. Plaintiff browsed the Website and observed presentations the same or substantially similar to those shown above, and that all or nearly all of the mattresses offered on the Website each had a Reference Price that was crossed out and a sale price that was significantly lower than the crossed-out Reference Price. He found and selected a mattress and foundation and added them to his shopping cart,

with Defendant displaying a Reference Price and a discount, as follows:

Order Subtotal                $2761.00

Discounts & Savings       -$380.00

23.     In other words, Plaintiff saw that the Website represented on the product description page for the mattress that it was supposedly on sale based on the advertised limited-time discounted offer and based on a markdown from a Reference Price. The Reference Price was displayed as a substantially higher price containing a strikethrough.

24.     Plaintiff thus purchased the mattress from Defendant's Website. Before doing so, Plaintiff relied on the representation that the mattress had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price. Plaintiff thus relied on Defendant's representation that the mattress he purchased was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by Defendant.

25.     Plaintiff's purchase included a Loom & Leaf Mattress, Queen Relaxed Firm (SKU: 7060-5/0) and a 4.75 inch Queen foundation (SKU: 8632-5/0). Including shipping and sales tax, Plaintiff paid $2,605.19 for his order. Of this amount, his "pre-sale" subtotal for the items was $2,761.00. After deceiving Plaintiff into making the purchase, Defendant reinforced to Plaintiff that he had received a genuine and substantial bargain in connection with his purchase by representing to him on his order confirmation that the "Discount" on his order amounted to $380.00. The items Plaintiff ordered were delivered to him in Los Angeles County, California.

26.     The truth, however, is that the mattress Plaintiff purchased was not substantially marked down or discounted, or at the very least, any discount he was receiving had been grossly exaggerated. That is because the mattress Plaintiff bought had not been offered for sale on the Website (or anywhere else) for any reasonably substantial period of time (if ever) at the full Reference Price. In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), Defendant

had not offered the mattress sold to Plaintiff at the Reference Prices. Those Reference Prices were fake prices used in Defendant's deceptive marketing scheme.

27.     At no time during his browsing of the Website or during the checkout process did Plaintiff view or agree to Defendant's terms of use. The Website did not and does not require customers, including Plaintiff, to affirmatively assent to the terms of use before completing their purchase. The Website does not display Defendant's terms of use during the checkout process.

28.     Defendant knows that the Reference Prices are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on its website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount. Defendant thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendant was simply being truthful about its "sales."

29.     Plaintiff reasonably relied on the Reference Price in making his purchase as a representation of the product's value and as a representation of the discount he was receiving. This information was material to Plaintiff's decision to purchase the mattress and material to price Plaintiff was willing to pay for the mattress.

30.     Therefore, Plaintiff would not have purchased the mattress, or at the very least, would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase because of the fake sale based on Defendant's fake Reference Price.

**d. Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendant's Influences Consumer Behavior and Affects Consumers' Perception of a Product's Value**

31.     The effectiveness of Defendant's deceitful pricing scheme is backed up by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d

1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992). Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id.* at 56. For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing, as Plaintiff's claims here, had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

32.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

33.     In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value…Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67

1   (January 2011).

2       34.     Similarly, according to Professors Praveen K. Kopalle and Joan

3   Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly

4   enhance buyers' perceptions of value" and "have a significant impact on consumer

5   purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of*

6   *External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225

7   (2003).

8       35.     The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy

9   Thomas Fitzgerald, came to the conclusion that "reference prices are important cues

10  consumers use when making the decision concerning how much they are willing to

11  pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation*

12  *Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing*

13  *To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990). This study also concluded

14  that "consumers are likely to be misled into a willingness to pay a higher price for a

15  product simply because the product has a higher reference price." *Id*.

16      36.     The clear inference to be drawn from this research and the Ninth

17  Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false

18  reference pricing employed here by Defendant is intended to, and does in fact,

19  influence customer behavior—as it did Plaintiff's purchasing decision here—by

20  artificially inflating customer perceptions of a given item's value and causing

21  customers to spend money they otherwise would not have, purchase items they

22  otherwise would not have, and/or spend more money for a product than they

23  otherwise would have absent the deceptive advertising.

24  **V.   CLASS ACTION ALLEGATIONS**

25      37.     Plaintiff brings this action on behalf of himself and all persons similarly

26  situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of

27  Civil Procedure and seeks certification of the following class:

28          All persons in the United States of America who purchased one or more

mattress from https://www.saatva.com/ between May 2020 through the present ("the Class Period") at a stated discount from a higher reference price and who have not received a refund or credit for their purchase(s).

38.     The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judges who preside over this action, and any partner or employee of Class Counsel.

39.     In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure:

All persons in the State of California who purchased one or more mattress from https://www.saatva.com/ between May 2020 through the present ("the Class Period") at a stated discount from a higher reference price and who have not received a refund or credit for their purchase(s).

40.     The above-referenced class of persons shall hereafter be referred to as the "California Class." Excluded from the California Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel.

41.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

42.     **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class.

43.     **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of

conduct as described herein.

44.     **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously.

45.     **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

(a)     Whether, during the Class Period, Defendant advertised false Reference Prices on products offered on its Website.

(b)     Whether, during the Class Period, Defendant advertised price discounts from false Reference Prices on products offered on its Website.

(c)     Whether the products listed on Defendant's Website during the Class Period were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

(d)     Does Defendant's deceptive pricing scheme using false Reference Prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.?

(e)     Does Defendant's deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq*.?

(f)     Does Defendant's deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq.*?

(g)     Does Defendant's deceptive pricing scheme using false Reference Prices constitute a violation of the California Legal Remedies Act California Civil Code §§1750, *et seq.*?

(h)     Whether Defendant's false Reference Prices on products offered on its Website during the Class Period are false representations.

(i)     Whether and when Defendant knew or learned that false Reference Prices on products offered on its Website during the Class Period are false representations.

(j)     What did Defendant hope to gain from using a false Reference Price scheme?

(k)     What did Defendant gain from its false Reference Price scheme?

(l)     Whether Defendant's use of false Reference Prices on products offered on its Website during the Class Period was material.

(m)     Whether Defendant had a duty to disclose to its customers that the Reference prices were fake "original" prices in furtherance of sham sales.

(n)     To what extent did Defendant's conduct cause, and continue to cause, harm to the Class?

(o)     Whether the members of the Class are entitled to damages and/or restitution.

(p)     What type of injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising?

(q)     Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

46.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

47.    **Ascertainability.** Upon information and belief, Defendant keeps extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. On information and belief, Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and

they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

48.     The California Class also satisfies each of the class action requirements set forth above. The allegations set forth above with regards to the Class, thus, apply equally to the California Class.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200, *et seq*.)**

**(By Plaintiff Against Defendant on Behalf of the Class, or in the Alternative, the California Class)**

49.     Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

50.     California Business and Professions Code section 17200 *et seq*., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

51.     A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

52.     Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California

Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

53.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendant, are deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

> (c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

> (d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or

---

which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

54.     The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisement and representations use the words "regular," "original," or "former" price:

> (e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

55.     Further, Defendant's conduct as described herein also violates California false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

56.     California law also expressly prohibits false former pricing schemes like the one employed by Defendant. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

> For the purpose of this article the worth or value of any thing advertised is the

prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

57.     Moreover, Defendant's conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal. Civ. Code §§ 1750, et seq. More specifically, Defendant violated the CLRA provisions prohibiting businesses from " "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code §1770(a)(13).

58.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

59.     Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that were false and inflated. Defendant's deceptive marketing practice gave consumers the false impression that Defendant's products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were. Defendant's acts and practices thus offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

60.     The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

61.     A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

62.     Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Among other things, Defendant affirmatively misrepresented the Reference Prices of its merchandise, which thereby misled and deceived customers into believing that they were buying merchandise from Defendant at substantially marked down and discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

63.     In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the Reference Prices advertised and published on its Website were not, in fact, prices at which Saatva items had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendant's products rarely (if ever) were offered at the advertised Reference Prices. Defendant, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

64.     Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and/or fraudulent business practices, and as a result of Defendant's unfair, deceptive, untrue or misleading advertising.

65.     Plaintiff, on behalf of himself and the members of the Class and California, seeks restitution and disgorgement of all moneys received by Defendant through the conduct described above.

66.     Plaintiff, on behalf of himself and the members of the Class and California Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including but not limited to, putting a stop to its deceptive advertisements and false Reference Prices in connection with its sale of products on its Website.

## SECOND CLAIM FOR RELIEF

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §17500, *et seq.***

**(By Plaintiff Against Defendant on Behalf of the Class, or in the Alternative, the California Class)**

67.     Plaintiff restates the foregoing paragraphs as if fully set forth herein.

68.     The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

69.     Similarly, another section of the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when

the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

70.     Here, Defendant routinely disseminated on its Website false Reference Prices for the products offered for sale on the Website, including to Plaintiff. Such statements of Defendant were untrue, or at the very least, were misleading. Among other things, Defendant rarely, if ever, offered mattresses on its Website at the Reference Prices displayed for each product. Further, Defendant rarely, if ever, offered mattresses on its Website at the Reference Prices within the three months immediately preceding the publication of the Reference Prices. Defendant thus misled customers, including Plaintiff, into believing that the Reference Prices are or were genuine original, retail, or former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

71.     Defendant engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase the sale of Saatva products offered by Defendant on its Website.

72.     Defendant knew, or by the exercise of reasonable care should have known, that its dissemination of Reference Prices for the mattress products sold on its Website was untrue and/or misleading. Among other things, Defendant represented the Reference Prices in connection with the Saatva products sold on its Website even though they knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the crossed-out Reference Prices.

73.     As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the Class and Califonia Class have

1    suffered injury in fact and have lost money. As such, Plaintiff requests that this
2    Court order Defendant to restore this money to Plaintiff and all members of the
3    Class and California Class, and to enjoin Defendant from continuing its false and
4    misleading advertising practices in violation of California law in the future.
5    Otherwise, Plaintiff, members of the Class and California Class, and the broader
6    general public will be irreparably harmed and/or denied an effective and complete
7    remedy.

8                              **THIRD CLAIM FOR RELIEF**
9        **VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES**
10              **ACT, CAL. CIV. CODE §1750,** *et seq.*
11    **(By Plaintiff Against Defendant on Behalf of the Class, or in the Alternative,**
12                              **the California Class)**

13       74.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set
14    forth herein.

15       75.   The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections
16    1750 *et seq.* (the "CLRA") is a California consumer protection statute which allows
17    plaintiffs to bring private civil actions for "unfair methods of competition and unfair
18    or deceptive acts or practices undertaken by any person in a transaction . . . which
19    results in the sale or lease of goods or services to any consumer." Cal. Civ. Code §
20    1770(a). The purposes of the CLRA are "to protect consumers against unfair and
21    deceptive business practices and to provide efficient and economical procedures to
22    secure such protection." Cal. Civ. Code §1760.

23       76.   Plaintiff and each member of the Class are "consumers" as defined by
24    California Civil Code section 1761(d). Defendant's sale of its Saatva products on its
25    Website to Plaintiff and the Class were "transactions" within the meaning of
26    California Civil Code section 1761(e). The products purchased by Plaintiff and the
27    Class are "goods" within the meaning of California Civil Code section 1761(a).

28

77.    Defendant violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's branded products: "Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Cal. Civ. Code §1770(a)(13).

78.    Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendant's merchandise was rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time, (b) there is no other channel through which the products have previously been offered for sale and/or sold at the false Reference Price for a reasonably substantial period of time, and (c) the Reference Prices Defendant advertises in connection with its products were never sold elsewhere for any other prices besides the falsely discounted sale prices at which customers bought items from Defendant.

79.    Plaintiff seeks an injunction for Defendant's violation of the CLRA to enjoin Defendant's methods, acts, and practices of deceiving customers through its false and misleading pricing scheme outlined above.

80.    Plaintiff reserves the right to amend the complaint to seek damages under the CLRA after notice has been provided pursuant to California Civil Code section 1782(a).

//

//

//

//

//

**FOURTH CLAIM FOR RELIEF**

**FRAUD (INTENTIONAL MISREPRESENTATIONS)**

**(By Plaintiff Against Defendant on Behalf of the Class, or in the Alternative, the California Class)**

81.    Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

82.    Defendant uniformly represented to all members of the Class during the Class Period in connection with its mattresses and other items on its Website that had a Reference Price. Defendant makes this uniform representation by displaying on the product description page for each these products a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

83.    Defendant's Reference Price representations are false. Among other things, Defendant's representations conveyed false information about the items Plaintiff and the Class purchased, namely that the items they purchased had sold in the recent past for a reasonably substantial period of time at the higher Reference Price displayed on Defendant's Website and/or in the prevailing market. The truth is that Defendant rarely, if ever, previously offered for sale and/or sold those products at the higher Reference Price for any reasonably substantial period of time. Moreover, the Reference Prices Defendant represented in connection with its products necessarily cannot be prevailing market prices because Defendant sells its branded products directly to consumers only at the prices advertised on its Website and thus, the items were never sold elsewhere for any other price besides the falsely discounted sale price at which customers bought items from Defendant.

84.    Defendant knew that its representations were false when it made them, or at the very least, it made the representations recklessly and without regard for their truth. In other words, Defendant knew that the mattresses Plaintiff and the

1   Class purchased had rarely, if ever, sold at the substantially higher Reference Price
2   displayed on Defendant's Website in the recent past and/or in the prevailing market.

3       85.    Defendant's representations were made with the intent that Plaintiff and
4   the Class rely on the false representations and spend money they otherwise would
5   not have spent, purchase items they otherwise would not have purchased, and/or
6   spend more money for an item than they otherwise would have absent the deceptive
7   marketing scheme.

8       86.    Defendant engaged in this fraud to the Plaintiff and the Class's
9   detriment in order to increase Defendant's own sales and profits.

10      87.    Plaintiff and the Class reasonably relied on Defendant's
11  representations.

12      88.    Absent Defendant's misrepresentations, Plaintiff and the Class would
13  not have purchased the items they purchased from Defendant, or, at the very least,
14  they would not have paid as much for the items as they ultimately did. Plaintiff and
15  the Class's reliance was a substantial factor in causing them harm.

16      89.    As a direct and proximate result of the above, Plaintiff and the Class
17  have suffered damages in an amount to be proven at trial.

18      90.    Defendant undertook the aforesaid illegal acts intentionally or with
19  conscious disregard of the rights of Plaintiff and the Class, and did so with fraud,
20  malice, and/or oppression. Based on the allegations above, Defendant's actions
21  constituted fraud because Defendant intended to and did deceive and injure Plaintiff
22  and the Class. Based on the allegations above, Defendant's actions constituted
23  malice because Defendant acted with the intent to and did cause injury to Plaintiff
24  and the Class, and also because Defendant's deceptive conduct was despicable and
25  was done with a willful and knowing disregard of the rights of Plaintiff and the
26  Class. Based on the allegations above, Defendant's actions constituted oppression
27  because Defendant's deceptive conduct was despicable and subjected Plaintiff and
28  the Class to cruel and unjust hardship in knowing disregard of their rights.

**FIFTH CLAIM FOR RELIEF**

**FRAUDULENT CONCEALMENT**

**(By Plaintiff Against Defendant on Behalf of the Class, or in the Alternative, the California Class)**

91.   Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

92.   Defendant uniformly disclosed some facts to Plaintiff and all members of the Class during the Class Period in connection with its mattresses and other items on its Website. Namely, Defendant disclosed a Reference Price for each item by displaying on the product description page for each item, as well as the on the thumbnail displays of each product when presented as a list, a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount or dollar amount.

93.   Defendant, however, intentionally failed to disclose other facts, making Defendant's disclosure deceptive. Specifically, Defendant failed to disclose that Defendant rarely, if ever, previously offered for sale and/or sold its mattresses at the higher Reference Price for any reasonably substantial period of time. Moreover, Defendant failed to disclose that the Reference Prices necessarily cannot be prevailing market prices because Defendant sells its products only at the prices advertised on its Website and thus, the items were never sold elsewhere for any other price besides the falsely discounted sale price at which customers bought items from Defendant. As a result, Defendant deceived Plaintiff and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality, the false Reference Price and discounting practice artificially inflated the true market value of the items they purchased.

94.   As a separate basis for concealment, Defendant uniformly and intentionally concealed from Plaintiff and all members of the Class that the items

they purchased from Defendant had rarely, if ever, been sold by Defendant in the recent past at the substantially higher Reference Price displayed on Defendant's Website and/or in the prevailing market. These were facts known only to Defendant that Plaintiff and the Class could not have discovered.

95.   Plaintiff and the Class did not know of the concealed facts.

96.   Defendant intended to deceive Plaintiff and the Class by concealing the facts described above.

97.   Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items he purchased from Defendant, or, at the very least, he would not have paid as much for the items as he ultimately did.

98.   The omitted information was material and thus, reliance is presumed on a classwide basis. The omitted information related to the price of the items sold on Defendant's Website and whether Plaintiff was receiving a true and genuine substantial discount or whether, instead, Plaintiff was being deceived into by products through a pricing scheme utilizing fake, artificially inflated original, retail, or former prices. A reasonable person would plainly attach importance to matters affecting pricing in determining his or her purchasing decision.

99.   As a direct and proximate result of the above, Plaintiff and the Class have been harmed and suffered damages in an amount to be proven at trial.

100.   Defendant undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the

1   Class. Based on the allegations above, Defendant's actions constituted oppression
2   because Defendant's deceptive conduct was despicable and subjected Plaintiff and
3   the Class to cruel and unjust hardship in knowing disregard of their rights.

4   **VII.   PRAYER FOR RELIEF**

5       101.   WHEREFORE, Plaintiff prays for judgment against Defendant, and
6   each of them, as follow:

7   <u>**ON THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE**</u>
8   <u>**UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§17200**</u>
9   <u>**_et seq._)**</u>

10      A.     For an order certifying that the action be maintained as a class action
11  under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil
12  Procedure, that Plaintiff be designated the class representative, and that undersigned
13  counsel be designated as class counsel.

14      B.     For an injunction putting a stop to the deceptive and misleading
15  conduct described herein and ordering Defendant to correct its deceptive and
16  misleading advertising and pricing practices.

17      C.     For an award of restitution and disgorgement of moneys paid that
18  Defendant obtained as a result of its unlawful, unfair, and fraudulent business
19  practices, and as a result of its unfair, deceptive, untrue, and misleading advertising,
20  all as described above.

21      D.     For an award of equitable and declaratory relief.

22      E.     For pre and post judgment interest and costs of suit incurred herein.

23      F.     For attorneys' fees incurred herein pursuant to California Code of Civil
24  Procedure section 1021.5, or to the extent otherwise permitted by law.

25      G.     For such other and further relief as the Court may deem just and proper.
26  //
27  //
28

29

1  **ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE**
2  **FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§17500 *et seq.***

3  H.  For an order certifying that the action be maintained as a class action
4  under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil
5  Procedure, that Plaintiff be designated the class representative, and that undersigned
6  counsel be designated as class counsel.

7  I.  For an injunction putting a stop to the deceptive and misleading
8  conduct described herein and ordering Defendant to correct its deceptive and
9  misleading advertising and pricing practices.

10  J.  For an award of restitution and disgorgement of moneys paid that
11  Defendant obtained as a result of its unlawful, unfair, and fraudulent business
12  practices, and as a result of its unfair, deceptive, untrue, and misleading advertising,
13  all as described above.

14  K.  For an award of equitable and declaratory relief.

15  L.  For pre and post judgment interest and costs of suit incurred herein.

16  M.  For attorneys' fees incurred herein pursuant to California Code of Civil
17  Procedure section 1021.5, or to the extent otherwise permitted by law.

18  N.  For such other and further relief as the Court may deem just and proper.

19  **ON THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE**
20  **CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§1750 *et seq.*)**

21  O.  For an order certifying that the action be maintained as a class action
22  under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil
23  Procedure, that Plaintiff be designated the class representative, and that undersigned
24  counsel be designated as class counsel.

25  P.  For an injunction putting a stop to the deceptive and misleading
26  conduct described herein and ordering Defendant to correct its deceptive and
27  misleading advertising and pricing practices.

28  Q.  For an award of equitable and declaratory relief.

CLASS ACTION COMPLAINT

1   R.   For attorneys' fees incurred herein pursuant to California Civil Code
2   section 1780, or to the extent otherwise permitted by law.

3   S.   For such other and further relief as the Court may deem just and proper.

4   **ON THE FOURTH CLAIM FOR RELIEF FOR FRAUD (AFFIRMATIVE**
5   **MISREPRESENTATIONS)**

6   T.   For an order certifying that the action be maintained as a class action
7   under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil
8   Procedure, that Plaintiff be designated the class representative, and that undersigned
9   counsel be designated as class counsel.

10   U.   For compensatory damages in an amount to be proven at trial.

11   V.   For punitive damages in an amount sufficient to punish Defendant and
12   to deter it from engaging in wrongful conduct in the future.

13   W.   For pre and post judgment interest and costs of suit incurred herein.

14   X.   For attorneys' fees incurred herein pursuant to California Code of Civil
15   Procedure section 1021.5, or to the extent otherwise permitted by law.

16   Y.   For such other and further relief as the Court may deem just and proper.

17   **ON THE FIFTH CLAIM FOR RELIEF FOR FRAUDULENT**
18   **CONCEALMENT**

19   Z.   For an order certifying that the action be maintained as a class action
20   under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil
21   Procedure, that Plaintiff be designated the class representative, and that undersigned
22   counsel be designated as class counsel.

23   AA.   For compensatory damages in an amount to be proven at trial.

24   BB.   For punitive damages in an amount sufficient to punish Defendant and
25   to deter it from engaging in wrongful conduct in the future.

26   CC.   For pre and post judgment interest and costs of suit incurred herein.

27   DD.   For attorneys' fees incurred herein pursuant to California Code of Civil
28   Procedure section 1021.5, or to the extent otherwise permitted by law.

EE.    For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all triable issues.

Dated:  May 7, 2024                    TURNER HENNINGSEN WOLF &

                                                      VANDENBURG, LLP


                                                      By:  /s/ Matthew Wolf
                                                             Matthew Wolf

                                                      Attorneys for Plaintiff
                                                      REECE LEWIS

CLASS ACTION COMPLAINT